Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**HYDE & SWIGART**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3609
Telephone:   (619) 233-7770
Facsimile:    (619) 297-1022

Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone:   (800) 400-6808
Facsimile:    (800) 520-5523

[Other Plaintiff's Counsel on signature page]

Attorneys for Katerina L. Chau, and all persons similarly situated

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| Katerina L. Chau, individually and on behalf of all others similarly situated, | Case No: '14CV0597 L    RBB |
|---|---|
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW** |
| Neiman Marcus Group LTD, Inc., | **2. NEGLIGENCE** |
| | **3. NEGLIGENCE PER SE** |
| Defendant. | **4. CONVERSION** |
| | **5. INVASION OF PRIVACY** |
| | **6. VIOLATION OF CALIFORNIA DATA BREACH ACT** |
| | **7. BAILMENT** |
| | **8. BREACH OF CONTRACT** |
| | **[DEMAND FOR JURY TRIAL]** |

**INTRODUCTION**

1.  Katerina L. Chau ("PLAINTIFF") brings this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of NEIMAN MARCUS GROUP LTD, INC. ("DEFENDANT") and its related entities, subsidiaries and agents, in failing to secure and protect its customers' personal information ("INFORMATION") provided to DEFENDANT, including names, credit and debit card numbers, expiration dates, and security codes in accordance with both industry security standards. PLAINTIFF alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2.  On or about January 11, 2014, DEFENDANT made public its largest and most wide-reaching security breach to date.   DEFENDANT revealed that hackers had succeeded in breaching the Dallas company's servers and accessed the payment information of its customers.. As a result of this breach DEFENDANT provided access to potentially millions of credit card records, debit card records, and other personal financial information for many of DEFENDANT'S customers and account holders. Said breach, which was caused by DEFENDANT'S failure to employ adequate security standards with respect to the handling of its customers' INFORMATION has resulted in PLAINTIFF and members of the Class   (as defined below) having their INFORMATION compromised and their finances placed in jeopardy.

**JURISDICTION AND VENUE**

3.  Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because the claims of the individual class members, when aggregated among a proposed class numbering in the millions, exceeds the $5,000,000 threshold for federal court jurisdiction.  Further, PLAINTIFF alleges a national class, which will result in at least one class member belonging to a different state than that of

1   DEFENDANT.   Therefore, both elements of diversity jurisdiction under the

2   Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has

3   jurisdiction.

4.   Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and 1441(a) because the events giving rise to PLAINTIFF'S causes of action against DEFENDANT occurred within the State of California and the County of San Diego, and named PLAINTIFF resides in San Diego County, California and within this judicial district.

## PARTIES

5.   PLAINTIFF is, and at all times mentioned herein was, an individual citizen and resident of the County of San Diego, State of California.

6.   PLAINTIFF is informed and believes, and thereon alleges, that DEFENDANT is, and at all times mentioned herein was, a corporation incorporated in the State of Texas, with its principal place of business in the City of Dallas, State of Texas.

7.   PLAINTIFF is informed and believes, and thereon alleges, that at all times relevant DEFENDANT conducted business in the State of California.

## FACTUAL ALLEGATIONS

8.   DEFENDANT is a nationwide retailer ranked 504th on the Fortune 1,000 list. PLAINTIFF is a regular shopper at Neiman Marcus stores, and uses her Neiman Marcus credit card regularly at a Neiman Marcus store in this Judicial District.   Plaintiff has made numerous purchases at Neiman Marcus between July 2013 and October 2013 and as recently December 26, 2013.

9.   Sometime prior to January 1, 2014, computer hackers broke into DEFENDANT'S computer network that contained its customers' personal financial information, including credit card and debit card information.

HYDE & SWIGART
San Diego, California

10.  The exact number of persons affected by the data breach is currently unknown but potentially effects millions of account holders and customers.  The data breach affected potentially millions of credit and debit cards maintained by DEFENDANT.

11.  Information surrounding the data breach was first disclosed by Brian Krebs earlier this week and news of the security breach was first published on or about January 10, 2014, by Brian Krebs, at http://krebsonsecurity.com/2014/01/hackers-steal-card-data-from-neiman-marcus/.  Mr. Krebs' website reported this breach before DEFENDANT first notified its customers of such breach.

12.  As to the breach, Mr. Krebs' website explained:

Earlier this week, I began hearing from sources in the financial industry about an increasing number of fraudulent credit and debit card charges that were being traced to cards that had been very recently used at brick-and-mortar stores run by the Dallas, Texas based high-end retail chain. Sources said that while it appears the fraud on those stolen cards was perpetrated at a variety of other stores, the common point of purchase among the compromised cards was Neiman Marcus.  Today, I reached out to Neiman Marcus and received confirmation that the company is in fact investigating a breach that was uncovered in mid-December.[1]

13.  Subsequently, multiple news sources detailed the breach on or about January 10, 2014.

14.  As multiple sources began reporting news of the breach, DEFENDANT issued a statement regarding the breach generally; however, this initial statement did not put impacted customers on notice as to breaches specific to them.

15.  DEFENDANT'S first statement was merely set forth on its corporate website, as opposed to the consumer website where customers shop; this was done on January 10, 2014.

---

[1] http://krebsonsecurity.com/2014/01/hackers-steal-card-data-from-neiman-marcus/

16.    The initial statement by DEFENDANT essentially confirmed the following"
Neiman Marcus was informed by our credit card processor in mid-December of potentially unauthorized payment card activity that occurred following customer purchases at our Neiman Marcus Group stores.   We informed federal law enforcement agencies and are working actively with the U.S. Secret Service, the payment brands, our credit card processor, a leading investigations, intelligence and risk management firm, and a leading forensics firm to investigate the situation. On January 1st, the forensics firm discovered evidence that the company was the victim of a criminal cyber-security intrusion and that some customers' cards were possibly compromised as a result. We have begun to contain the intrusion and have taken significant steps to further enhance information security.[2]

17.    Although sources suggest that the breach occurred as early as March 2013 and were informed about it by a third party at least by mid-December, DEFENDANT waited until after the Christmas holiday to disclose the breach and provide notice to consumers.   In fact, DEFENDANT did not notify PLAINTIFF of the security breach until January 11, 2014, by e-mail, wherein DEFENDANT merely regurgitated its statement from January 10, 2014, on its website.

18.    Hackers could not have accessed customers' credit card and financial data but for DEFENDANT'S negligence.   Upon information and belief, DEFENDANT knew or reasonably should have known about the intrusion because the malicious code used by the hackers set off thousands of alerts which DEFENDANT failed to investigate.

19.    DEFENDANT failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

20.    DEFENDANT knew or should have known that its systems for processing and/or storing customers' debit and credit card information were not secure

[2] http://krebsonsecurity.com/2014/01/hackers-steal-card-data-from-neiman-marcus/

and left the INFORMATION of PLAINTIFF and other members of the Class vulnerable to theft.

21.  DEFENDANT recklessly, or as a matter of gross negligence, failed to provide reasonable and adequate security measures to ensure that the personal financial information of its customers would not be compromised.

22.  Additionally, DEFENDANT failed to notify PLAINTIFF and the other members of the Class in a timely manner of the security breach, as required by law.

23.  On information and belief, DEFENDANT failed to encrypt data; improperly stored and retained credit-card transaction and customer data; failed to take all reasonable steps to destroy or arrange for the destruction of customers' records within its custody or control containing INFORMATION that is no longer authorized to be retained by the business by failing to shred, erase, or otherwise modify the INFORMATION in those records to make it unreadable or undecipherable through any means; failed to properly install, implement, and maintain firewalls to protect consumer data; failed to properly analyze and restrict IP addresses to and from its computer systems; failed to perform dynamic packet filtering; failed to properly restrict access to its computers; failed to properly protect stored data; failed to properly encrypt cardholder data and other sensitive information; failed to properly implement and update anti-virus and anti-spyware software that would properly prevent unauthorized data transmissions caused by viruses, executables or scripts from its servers or computer systems; failed to segment the card-data network from the general-purpose network; failed to track or monitor all access to network resources and cardholder data; failed to regularly test security systems and process or maintain an adequate policy that addresses information security or to run vulnerability scans; and failed to provide prompt and adequate warnings of security breaches or vulnerabilities.

24. As a high-end retail store DEFENDANT provides customers with the option to pay with credit or debit cards, and indeed the price of many items at DEFENDANT'S stores for most people preclude payment through a means other than plastic.   DEFENDANT expects that many if not most customers will use credit or debit cards to make purchases, and consequently consumers who shop at DEFENDANT'S stores reasonably expect that this information will be kept secure.

25. Consumers place value in data privacy and security, and they consider it in making purchasing decisions.   It is widely known among businesses that consumers are willing to pay increased prices in order to do business with merchants who better protect their privacy by following FTC best practices. In fact, little research has been performed since 2004 to establish whether people value privacy, since it is widely understood that they do.  Research has since shifted to examine the extent to which they value it, when balanced with other concerns, and how this changes based on specific circumstances.

26. Academic research has shown that consumers are willing to spend additional money (a premium) in exchange for stronger privacy protections, which includes the secure storage of their personal information, and research also supports the corollary point, that consumers expect increased data security and privacy when they pay additional money for a service.   Consumer software and technology markets have likewise demonstrated that consumers value their privacy and security and incorporate data security practices into their purchases.[3]

27. Because of the value consumers place on data privacy and security, services with better security practices command higher prices than those without.   In other words, DEFENDANT is able to charge higher prices, and does charge

---

[3]   *See* Rust et al., *The Customer Economics of Internet Privacy, Journal of the Academy of Marketing Sciences* 30, 4 (2002) at 461.

HYDE & SWIGART
San Diego, California

higher prices, because among other things of the conveniences it provides to customers, including convenience of payment method.  Moreover, some of the costs attributable to making these payment methods available is passed on to consumers, whose purchasing decisions and decision to shop at DEFENDANT'S stores at all and pay the high prices demanded by Neiman Marcus is influenced by the understanding that their INFORMATION will be secure.

28.  PLAINTIFF and other Class members' INFORMATION is property.  There is a market for personal data and data regarding individuals' opinions and interests.[4]   Individuals can market their own PII for profit through, for example, focus groups (which pay individuals to express their interests and opinions) or companies like Allow Ltd., which allow users to sell information to marketers regarding their name, address, employment, and shopping interests and intent (e.g., products the individual is interested in, whether the user is interested in applying for a credit card). The value of such information is diminished, if not eliminated, if that information is publicly distributed or leaked.   This INFORMATION has value to companies because it can be compiled and sold as demographic data and advertising analytics or sold on a per-name basis (for example, companies like infoUSA compile lists of consumer information, and sell name and contract information categorized by demographic data, interests, or other behavioral information).

29.  Moreover, PLAINTIFF and other Class members' INFORMATION, including credit and debit card numbers, has quantifiable value on the black market.  The compromised INFORMATION, including PLAINTIFF'S, is "as

---

[4]   Companies, in fact, also recognize customers' personal information is an extremely valuable commodity akin to a form of personal property.   For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market.  *See* Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/ victim/assessment-tool.html. *See also* T. Soma, ET AL, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009).

good as gold" to identity thieves, per the view of the Federal Trade Commission ("FTC").[5]  According to the FTC, identity theft occurs when someone uses another's personal identifying information, such as that person's name, address, credit card number, credit card expiration dates, and other information, without permission, to commit fraud or other crimes.[6]  The FTC estimates that as many as 9 million Americans have their identities stolen each year.[7]

30.   Identity thieves can use identifying data to open new financial accounts and incur charges in another person's name; take out loans in another person's name, incur charges on existing accounts; clone ATM, debit, or credit cards; take over accounts and assume a person's identity; make fraudulent online purchases; and aggregate stolen INFORMATION for sale to the highest bidder.[8]

31.   Identity thieves can use personal information such as that pertaining to the Class, which DEFENDANT failed to keep secure, to perpetrate a variety of crimes that do not cause financial loss but nonetheless harm the victims. P

32.   PLAINTIFF and the members of the Class have all suffered irreparable harm and monetary damages as a result of DEFENDANT'S unlawful and wrongful conduct heretofore described.

33.   As a result of the security breach as alleged herein, PLAINTIFF and Class members suffered injury in fact and severe monetary and non-monetary damages.

34.   Specifically, as a direct and proximate result of DEFENDANT's conduct, PLAINTIFF and members of the putative Class have suffered economic

_____

[5] FTC, *About Identity Theft,* available at http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identitytheft.html (last accessed Jan. 6, 2014).

[6] *Id.*

[7] *Id.*

[8] *Id.*

HYDE & SWIGART
San Diego, California

damages, including, but not limited to, the costs of obtaining identity-theft insurance and credit-monitoring, canceling and obtaining new credit and debit cards, as well as fees for freezing and unfreezing bank and credit accounts. Plaintiff also overpaid for the merchandise they purchased from DEFENDANT.

35.  PLAINTIFF and the Class have also suffered non-economic damages, including but not limited to loss of and invasion of privacy, loss of property, loss of money, loss of control of their personal financial and other nonpublic information, fear and apprehension of fraud and loss of money.  PLAINTIFF and members of the putative Class are at an increased and imminent risk of falling victim to identity-theft crimes, fraud, and abuse, and must continue to bear the burden of years of constant credit surveillance and monitoring to prevent further losses.

36.  Furthermore, as a direct and proximate result of DEFENDANT's failure to implement and maintain reasonable security procedures and practices to protect the private information of PLAINTIFF and members of the putative Class, PLAINTIFF and putative Class members have suffered additional actual damages, including, but not limited to, theft of and unauthorized and/or unlawful use of PLAINTIFF's and putative Class members' identities by unauthorized persons, loss of money, and loss of time.  This includes, but is not limited to, actual damages for unauthorized charges, overdraft fees, bounced-check fees, and late charges.

**CLASS ACTION ALLEGATIONS**

37.  PLAINTIFF brings this action on behalf of herself and on behalf of all others similarly situated ("the Class").

38.  PLAINTIFF represents, and is a member of, the Class, consisting of:
    All persons within the United States who used credit or debit cards at Neiman Marcus stores within the United States with DEFENDANT and whose personal and/or financial information was compromised.

HYDE & SWIGART
San Diego, California

39. DEFENDANT and its employees or agents are excluded from the Class. PLAINTIFF does not know the number of members in the Class but believes there may be as many as 1.1 million Class members .   Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

40. PLAINTIFF and members of the Class were harmed by the acts and omissions of DEFENDANT in at least the following ways:  PLAINTIFF and members of the Class have lost money or property as a result of DEFENDANT'S negligence and concealments.

41. PLAINTIFF reserves the right to amend or modify the class description with greater particularity or further division into subclasses or limitation to particular issues.

42. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.   The Class can be identified through DEFENDANT'S records or DEFENDANT'S agents' records.

43. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact pertaining to the Class predominate over questions which may affect individual Class members, including *inter alia*:

    a. Whether DEFENDANT unlawfully used, maintained, lost or disclosed Class members' personal and/or financial information;

    b. Whether DEFENDANT unreasonably delayed in notifying affected customers of the data breach;

    c. Whether DEFENDANT failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

d. Whether DEFENDANT owed a duty to PLAINTIFF and Class members to exercise reasonable care in protecting and securing their INFORMATION;

e. Whether DEFENDANT breached its duty to exercise reasonable care in failing to protect and secure PLAINTIFF'S and Class members' INFORMATION;

f. Whether DEFENDANT was negligent in failing to protect and secure PLAINTIFF's and Class members' INFORMATION;

g. Whether DEFENDANT violated the requirements of California Civil Code Section 1798.80 *et seq.*;

h. Whether DEFENDANT'S conduct violated the California Business & Professions Code § 17200, *et seq.*;

i. Whether DEFENDANT acted willfully and/or with oppression, fraud, or malice;

j. Whether DEFENDANT'S conduct constituted Intrusion;

k. Whether DEFENDANT'S conduct constituted Public Disclosure of Private Facts;

l. Whether DEFENDANT'S conduct violated Class members' California Constitutional Right to Privacy;

m. Whether DEFENDANT'S conduct constituted Bailment;

n. Whether DEFENDANT'S conduct constituted Conversion; Whether DEFENDANT entered into a contract with PLAINTIFF and Class members containing an implied term to safeguard their INFORMATION;

o. Whether DEFENDANT breached its contract with PLAINTIFF and Class members; and

p. Whether PLAINTIFF and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

44. As a person whose personal information was compromised as a result of DEFENDANT'S wrongful conduct as herein alleged, PLAINTIFF is asserting claims that are typical of the Class.   PLAINTIFF will fairly and adequately represent and protect the interests of the Class in that PLAINTIFF has no interests antagonistic to any member of the Class.

45. PLAINTIFF and the members of the Class have all suffered irreparable harm as a result of the DEFENDANT'S unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

46. PLAINTIFF has retained counsel experienced in handling class action lawsuits.

47. A class action is a superior method for the fair and efficient adjudication of this controversy.   The interest of Class members in individually controlling the prosecution of separate claims against DEFENDANT is small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to DEFENDANT'S conduct.

48. DEFENDANT has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

//
//
//
//
//

# FIRST CAUSE OF ACTION

## UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS

## PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS

## CODE § 17200, ET SEQ.

49. PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. DEFENDANT'S failure to disclose information concerning the data breach directly and promptly to affected customers, constitutes a fraudulent act or practice in violation of California Business & Professions Code section 17200 et seq.

51. DEFENDANT'S acts, practices, and omissions detailed above constitute fraudulent practices in that they are likely to deceive a reasonable consumer in that PLAINTIFF and Class members were induced to shop at Neiman Marcus stores and pay for merchandise using credit cards based on the understanding, whether explicit or implied, that DEFENDANT had implemented appropriate security protocols and that, in the event of a loss or breach, DEFENDANT would promptly notify affected customers.

52. DEFENDANT'S acts, practices, and omissions detailed above, constitute unlawful practices and/or acts as they constitute violations of numerous provisions of California law, including but not limited to Cal. Civ. Code § 1798.80 *et seq.*

53. DEFENDANT has committed all of the aforesaid acts of infringement deliberately, willfully, maliciously and oppressively, without regard to PLAINTIFF and Class members' legal rights.   As a direct and proximate result of DEFENDANT'S unlawful, unfair and fraudulent business practices as alleged herein, PLAINTIFF and Class members have suffered injury in fact and lost money and property, including but not limited to unreimbursed losses stemming from identity theft as well as unreimbursed expenses and/or time

spent on credit-monitoring and identity theft insurance; time spent scrutinizing bank statements, credit-card statements, and credit reports; missed wages; late payments on bills; overdraft charges; expenses and/or time spent initiating fraud alerts; and the diminished value of the services they received.   PLAINTIFF and members of the Class have suffered and will continue to suffer other forms of injury and/or harm including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

54.   Pursuant to California Business & Professions Code § 17203, PLAINTIFF seeks an order of this Court prohibiting DEFENDANT from engaging in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and/or ordering DEFENDANT to perform its obligations under the law.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

55.   PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56.   DEFENDANT came into possession of the INFORMATION of PLAINTIFF and other Class members and thus had a duty to exercise reasonable care in safeguarding and protecting such INFORMATION from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

57.   Moreover, by agreeing to accept PLAINTIFF'S and Class members' INFORMATION, Defendants assumed a duty that required the exercise of reasonable care to secure and safeguard that information from unauthorized access or disclosure, to utilize industry-standard protocols and technology to do so, and to promptly notify PLAINTIFF and other affected Class members of a breach of security and take remedial measures relating thereto.

58. DEFENDANT had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of said INFORMATION.

59. DEFENDANT, through its actions and/or omissions, unlawfully breached its duty to PLAINTIFF and Class members by failing to exercise reasonable care in protecting and safeguarding said INFORMATION within its possession.

60. DEFENDANT, through its actions and/or omissions, unlawfully breached its duty to PLAINTIFF and Class members to exercise reasonable care by failing to have appropriate procedures in place to detect and prevent dissemination of PLAINTIFF'S and other Class members' INFORMATION.

61. DEFENDANT, through its actions and/or omissions, unlawfully breached its duty to timely disclose to PLAINTIFF and the Class members the fact that their INFORMATION had been compromised.

62. DEFENDANT'S negligent and wrongful breach of its duties owed to PLAINTIFF and the Class proximately caused PLAINTIFF and Class members' INFORMATION to be compromised.

63. As a direct and proximate cause of DEFENDANT'S failure to exercise reasonable care and use commercially reasonable security measures its databases were accessed without authorization and customers' INFORMATION was compromised and exposed to unauthorized access.

64. As a further direct and proximate cause of DEFENDANT'S failure to exercise reasonable care as described herein, PLAINTIFF and Class members have suffered economic and non-economic damages as described above and prayed for below in an amount according to proof at trial. PLAINTIFF is informed and believes and based thereupon alleges that DEFENDANT will continue to negligently fail to adequately protect the INFORMATION of PLAINTIFF and other customers. As a result of DEFENDANT'S conduct PLAINTIFF seeks declaratory and injunctive relief, restitution, and compensatory and punitive damages.

65.   In failing to secure PLAINTIFF'S and Class members' INFORMATION and promptly notify them of a data breach or loss, as alleged above, DEFENDANT was guilty of oppression, fraud, or malice, in that DEFENDANT acted or failed to act with a willful and conscious disregard of PLAINTIFF'S and Class members' rights.   PLAINTIFF therefore seeks an award of damages, including punitive damages, in an amount to be proven at trial, on behalf of herself and the Class.

## THIRD CAUSE OF ACTION
## NEGLIGENCE PER SE

66.   PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67.   As herein, DEFENDANT violated various statutes, including California Civil Code §§ 1798.80 et seq., which requires a business that licenses, owns, or maintains INFORMATION to give prompt notification to persons potentially affected by a security breach.

68.   This statute was intended to protect customers' information from unauthorized disclosure and to ensure prompt notification of any such unauthorized, unlawful disclosure.

69.   As a direct and proximate cause of DEFENDANT'S violation of the foregoing statutes, PLAINTIFF and other consumers have suffered injury, including actual identity theft.   Moreover, PLAINTIFF and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit-monitoring and identity theft insurance; time spent scrutinizing bank statements, credit-card statements, and credit reports; missed wages; late payments on bills; overdraft charges; expenses and/or time spent initiating fraud alerts; and the diminished value of the services they received.   PLAINTIFF and members of the Class have suffered and will continue to suffer other forms of injury and/or harm

HYDE & SWIGART
San Diego, California

1   including, but not limited to, anxiety, emotional distress, loss of privacy, and

2   other economic and non-economic losses.

3   70.  By engaging in the negligent conduct as alleged above, DEFENDANT was

4   guilty of oppression, fraud, or malice, in that DEFENDANT acted or failed to

5   act with a willful and conscious disregard of PLAINTIFF'S and Class

6   members' rights.   PLAINTIFF therefore seeks an award of damages,

7   including punitive damages, in an amount to be proven at trial, on behalf of

8   herself and the Class.

9                          **FOURTH CAUSE OF ACTION**

10                              **CONVERSION**

11  71.  PLAINTIFF incorporates by reference all of the above paragraphs of this

12   Complaint as though fully stated herein.

13  72.  Plaintiff and Class members were the owners and possessors of their

14   INFORMATION. As the result of DEFENDANT'S wrongful conduct,

15   DEFENDANT has interfered with the PLAINTIFF'S and Class members'

16   rights to possess and control such property, to which they had a superior right

17   of possession and control at the time of conversion.

18  73.  As a direct and proximate result of DEFENDANT'S conduct, PLAINTIFF

19   and the Class members suffered injury, damage, loss or harm and therefore

20   seek compensatory damages.

21  74.  Plaintiff and the Class members did not consent to DEFENDANT'S

22   mishandling and loss of their INFORMATION.

23  75.  In converting the INFORMATION of PLAINTIFF and Class members,

24   DEFENDANT has acted with malice, oppression and in conscious disregard

25   of the PLAINTIFF'S and Class members' rights.   PLAINTIFF, therefore,

26   seeks an award of punitive damages on behalf of the Class.

27  //

28  //

HYDE & SWIGART
San Diego, California

## FIFTH CAUSE OF ACTION

## INVASION OF PRIVACY

76. PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

77. The INFORMATION of PLAINTIFF and other consumers of DEFENDANT was and continues to be private information.  PLAINTIFF and each member of the Class had a legally protected informational privacy interest in the confidential and sensitive information that DEFENDANT obtained and unlawfully disseminated.

78. PLAINTIFF and other members of the Class had a legally protected autonomy privacy interest regarding their INFORMATION without unwanted observation, intrusion, or interference.

79. PLAINTIFF and members of the Class reasonably expected that their confidential and sensitive information would be kept private.

80. DEFENDANT'S failure to secure and protect PLAINTIFF'S and other customers' INFORMATION resulted in the public disclosure and publication of such private information to third parties, including but not limited to hackers.

81. Dissemination of PLAINTIFF'S and other consumers' INFORMATION is not of a legitimate public concern; publicity of their INFORMATION would be, is, and will continue to be offensive to PLAINTIFF, putative Class members, and other reasonable people.

82. DEFENDANT'S wrongful actions and/or inaction as described above constituted and continue to constitute a serious invasion of the privacy of PLAINTIFF and other consumers by publicly disclosing private facts (*i.e.*, their INFORMATION).

83. PLAINTIFF and other consumers were and continue to be damaged as a direct and/or proximate result of DEFENDANT'S invasion of their privacy

by publicly disclosing their private facts (*i.e.*, their INFORMATION) in the form of, *inter alia*, actual monetary losses, expenses for credit-monitoring and identity-theft insurance, out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other economic and non-economic harm, for which they are entitled to compensation.

84. In violating the privacy of PLAINTIFF and Class members as alleged above, DEFENDANT was guilty of oppression, fraud, or malice, in that DEFENDANT acted or failed to act with a willful and conscious disregard of PLAINTIFF'S and Class members' rights.   PLAINTIFF therefore seeks an award of damages, including punitive damages, in an amount to be proven at trial, on behalf of herself and the Class.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA DATA BREACH ACT, CAL CIV.**

**CODE § 1798.80, ET SEQ.**

85. PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

86. DEFENDANT owns and/or licenses computerized data that includes PLAINTIFF'S and Class members' INFORMATION and/or maintains computerized data that includes INFORMATION that it does not own.   As such, DEFENDANT owed PLAINTIFF and Class members a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure, and to promptly notify and disclose any breach of security and/or unauthorized access of such information to persons affected thereby.

87. The data breach constituted a "breach of the security system" of DEFENDANT pursuant to California Civil Code § 1798.82(g).

88. DEFENDANT recklessly, or as a matter of gross negligence, failed to provide reasonable and adequate security measures.

89. DEFENDANT unreasonably delayed informing PLAINTIFF and members of the Class about the security breach of the Class members' INFORMATION after DEFENDANT knew of the breach.

90. DEFENDANT failed to disclose to PLAINTIFF and members of the Class, in the most expedient time possible, the breach of security of their INFORMATION after DEFENDANT knew of the breach.

91. As a result of DEFENDANT'S violation of California Civil Code § 1798.82, PLAINTIFF and members of the Class suffered economic and non-economic damages, as alleged above.

92. PLAINTIFF, individually and on behalf of the members of the Class, seeks all remedies available under California Civil Code § 1798.84.

93. PLAINTIFF, individually and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under California Civil Code § 1798.84(g).

94. By violating California Civil Code § 1798.80 *et seq.* as alleged above, DEFENDANT was guilty of oppression, fraud, or malice, in that DEFENDANT acted or failed to act with a willful and conscious disregard of PLAINTIFF'S and Class members' rights.   PLAINTIFF therefore seeks an award of damages, including punitive damages, in an amount to be proven at trial, on behalf of herself and the Class.

## SEVENTH CAUSE OF ACTION

## BAILMENT

95. PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

//

//

HYDE & SWIGART
San Diego, California

96. PLAINTIFF and the Class members delivered and entrusted their INFORMATION to DEFENDANT for the sole purpose of receiving services from DEFENDANT.

97. During the time of bailment, DEFENDANT owed PLAINTIFF and the Class members a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information. DEFENDANT breached this duty.

98. As a result of these breaches of duty, PLAINTIFF and the Class members have suffered harm, as alleged above.

99. PLAINTIFF seeks actual damages on behalf of the Class.

100. Moreover, DEFENDANT, by and through the conduct alleged above, was guilty of oppression, fraud, or malice, in that DEFENDANT acted or failed to act with a willful and conscious disregard of PLAINTIFF'S and Class members' rights.   PLAINTIFF therefore seeks an award of damages, including punitive damages, in an amount to be proven at trial, on behalf of herself and the Class.

## EIGHTH CAUSE OF ACTION

## BREACH OF CONTRACT

101. PLAINTIFF incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102. DEFENDANT entered into a contract with PLAINTIFF and Class members for the sale of merchandise to be paid for using credit and/or debit cards. Implied in this contract was the understanding that DEFENDANT would take adequate measures to safeguard customers' INFORMATION, including adopting industry-standard security protocols.

103. DEFENDANT breached this contract by failing to take adequate measures to properly secure PLAINTIFF'S and Class members' INFORMATION.

104.  As a direct and proximate cause of Defendants' breach, PLAINTIFF and members of the putative Class have suffered injury, as alleged above. PLAINTIFF and putative Class members did not receive the benefit of their bargain for which they paid valuable consideration and therefore are entitled to damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests that the Court grant PLAINTIFF and the Class members the following relief against DEFENDANT:

a.  An order certifying the proposed Class and appointing PLAINTIFF and PLAINTIFF'S counsel to represent the Class;

b.  Injunctive relief prohibiting DEFENDANT from engaging in such conduct as alleged herein in the future;

c.  Actual, statutory and/or punitive damages;

d.  Restitution, or any other equitable relief the Court may deem just and proper;

e.  Pre-judgment and post-judgment interest;

f.  Reasonable attorneys' fees and costs of the suit, including expert witness fees; and

g.  Any other relief the Court may deem just and proper.

## TRIAL BY JURY

PLAINTIFF hereby demands a jury trial on all issues so triable.


Respectfully submitted,

**Hyde & Swigart**


Date: March 14, 2014                    By: /s/Joshua B. Swigart
                                        Joshua B. Swigart
                                        Attorneys for Plaintiffs

1  TODD M. FRIEDMAN, Cal. Bar No. 216752
   tfriedman@attorneysforconsumers.com
2  NICHOLAS J. BONTRAGER, Cal. Bar No. 252114
   nbontrager@attorneysforconsumers.com
3  **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
4  369 S. Doheny Drive, Suite 415
   Beverly Hills, California 90211
5  Telephone:   (877) 206-4741
   Facsimile:   (866) 633-0228
6

7  ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
8  anthony@counselonegroup.com
   JUSTIN KACHADOORIAN, Cal. Bar No. 260356
9  justin@counselonegroup.com
10 **COUNSELONE, P.C.**
   9301 Wilshire Boulevard, Suite 650
11 Beverly Hills, California 90210
12 Telephone:   (310) 277-9945
   Facsimile:   (424) 277-3727
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28